WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Arturo Alvarez,<br><br>                    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                    Defendant. | No. CV-13-00422-TUC-BPV<br><br>**ORDER** |

      Plaintiff, Jose Alturo Alvarez, filed this action for review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Plaintiff presents two issues on appeal: (1) whether the ALJ's determination that Plaintiff's spinal condition does not meet or equal any of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 ("the Listings" or "Listing of Impairments") is supported by substantial evidence; and (2) whether substantial evidence supports the ALJ's residual functional capacity (RFC) assessment. (Doc. 21.) Before the court is an opening brief filed by Plaintiff (Doc. 21), and the Commissioner's opposition (Doc. 22), no reply brief was filed.

      The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties. (Doc. 12.)

      The Commissioner's decision denying benefits is reversed and remanded for further proceedings consistent with this order.

## I. Background

Plaintiff filed an application for Disability Insurance Benefits (DIB) on August 3, 2010, with a protective filing date of July 20, 2010, alleging disability as of November 1, 2008, due to congenital fusion of C2-C3 cervical spine, a right ear hearing problem, and a right eye vision problem. Transcript/Administrative Record (Tr.) 158, 162. The application was denied initially and on reconsideration. Tr. 67-96, 98-100. Plaintiff appeared with counsel and testified before an ALJ at an administrative hearing. Tr. 34-66. On January 13, 2012 the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 7-18.

### A. Plaintiff's Background and Statements in the Record

Plaintiff was 43 years of age on the November 1, 2008 alleged disability onset date, and 46 years of age as of the date of the Commissioner's final decision. Tr. 141. Plaintiff has a 12th grade education, and past work experience as a mining car loader, a construction worker, and a cable service technician. Tr. 163, 168, 199.

Plaintiff testified at a hearing before the ALJ on December 5, 2011 that he had not worked at all since November 2008. Tr. 39. Plaintiff testified that he could not return to any of his previous jobs because he "wouldn't be able to handle them" because he doesn't have the strength, and couldn't stand up that long. Tr. 50-51. He testified that he couldn't do a sedentary job because he can't be sitting down for a long time. Tr. 54, 58-59.

Plaintiff testified that he could probably walk for about 15 to 20 minutes before he needed sit down for five to 10 minutes, and then could walk again, and that he normally walks with a slow gait. Tr. 39-40, 46. Plaintiff can only sit or stand for five minutes at a time. Tr. 40-41. Plaintiff can lift 15 to 20 pounds with each arm.

Plaintiff testified that his pain has gotten worse, and his primary doctor told him that the cause of the pain is the fusion in his spine, and two pinched nerves in his neck. Tr. 42. Plaintiff didn't recall ever telling the consultative examining physician that he didn't have any problems walking. Tr. 45-46.

Plaintiff testified he lost his hearing in his right ear, and his sight in his right eye. Tr. 47. On further questioning, Plaintiff explained he can see with his right eye, but has problems seeing. Tr. 47. Plaintiff needs glasses but cannot afford them. Tr. 48. Plaintiff testified that his hearing loss in his right ear had gotten worse since his assessment of mild hearing loss in April 2011. Tr. 49-50.

### B. Vocational Expert Testimony

A vocational expert (VE) testified that Plaintiff's jobs had all been more than sedentary, and the ALJ found that he would not be able to perform his past relevant work. Tr. 61. The ALJ posed the following hypothetical limitations to the VE: "limited to sedentary level work. … [C]annot use ladders, ropes, or scaffolds. … [C]annot perform tasks in a fast paced production environment… [and] is to avoid concentrated exposure to excessive noise or hazards. … [M]ust be afforded a sit stand option during the work day one to two minutes every hour or so. … [and] is limited to occupations that allow such an individual to use either glasses or a hearing aid on the job as needed. … and has the same vocational and education background as … Claimant." Tr. 61-62. The VE testified that the hypothetical individual could perform sedentary, unskilled and semi-skilled jobs, such as a sorter and a document specialist. Tr. 63.

The VE testified that if the hypothetical individual could not attend and concentrate for up to two hours at a time with appropriate breaks, the individual would not be able to maintain employment because of the disruption of the pace of the job. Tr. 64. Furthermore, if an individual can only sit for five minutes, then has to stand up and walk around for two or three minutes, and then can sit back down, the VE testified that such an individual could not perform any of the jobs the VE proffered.

### C. The ALJ's Findings and Conclusions

The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2013. Tr. 12, ¶ 1. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2008. Tr. 12 ¶ 2. The ALJ found that Plaintiff has the following severe impairments:

degenerative disc disease and congenital fusion of the cervical spine, unilateral hearing loss, and visual field contraction. Tr. 12, ¶ 3. The ALJ found that Plaintiff's impairments did not meet or equal any of the impairments found in the Listings, sections 1.04, 2.03, and 2.10. Tr. 13, ¶ 4. The ALJ found that Plaintiff has the RFC to perform sedentary work subject to the following: "He requires the option to alternate at will between seated and standing positions every hour or so for 1-2 minutes; he cannot climb ladders, ropes or scaffolds; he cannot perform tasks in a fast-paced production environment; he should avoid concentrated exposure to excessive noise, and to hazards such as unprotected heights or dangerous machinery; and he is further limited to occupations that allow an individual to use eyeglasses or a hearing aid on the job, as needed. Tr. 14, ¶ 5.  The ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 16, ¶ 6. The ALJ further found that considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and concluded that Plaintiff was not under a disability from October 1, 2006 through the date of the ALJ's decision. Tr. 17-18, ¶¶ 7-11.

This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 1-3. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1.)

## II.     Legal Standard

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence*." Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). " 'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.

2006)). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Robbins,* 466 F.3d at 882). The Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely. *Garrison v. Colvin*, --- F.3d ---, 2014 WL 3397218 at *11 (9th Cir. July 14, 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Whether a claimant is disabled is determined using a five-step evaluation process. To establish disability, the claimant must show (1) he has not worked since the alleged disability onset date, (2) he has a severe impairment, and (3) his impairment meets or equals the severity of a disabling impairment in the Listings or (4) his RFC precludes him from performing his past work. At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. § 404.1520(a).

**III.   Analysis**

    A.   The ALJ's RFC Findings

The Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence, specifically, that, in making the RFC determination, the ALJ failed to obtain a psychiatric consultative examination, failed to consider Plaintiff's physical therapy treatment, and erred in finding Plaintiff not credible. (Doc. 21, at 15-20.)

        *1.   The ALJ Did Not Err by Failing to Obtain a Psychiatric Consultation.*

Plaintiff contends that the ALJ erred by failing to seek a psychiatric consultation given the evidence of Plaintiff's diagnosis and treatment for depression. (Doc. 21, at 17.)

At the reconsideration stage of Plaintiff's disability determination, State Agency non-examining consultative physician, Martha Goodrich, M.D., requested that hearing and vision consultative examinations be obtained. Tr. 85. Subsequently, in April 2011, an eye examination was performed by State Agency Examiner Jonathon Gross, M.D., who opined that the etiologic factor responsible for Plaintiff's primary eye condition was

"suspect emotional disturbance" and recommended reading glasses and a psychiatric consult. Tr. 315-16. Based on Dr. Gross's note, and the evidence of depression and treatment in the record, Plaintiff asserts the ALJ erred by failing to seek a psychiatric consultation. (Doc. 21, at 17.)

There is no indication in the record that Dr. Gross reviewed any of Plaintiff's medical records from Plaintiff's treating physician, Edgardo Laguillo, M.D. Tr. 315-21. Treatment notes from Dr. Laguillo reveal that Plaintiff was diagnosed and successfully treated for depression. Dr. Laguillo noted psychological symptoms of anxiety, depression, and sleep disturbances at Plaintiff's new patient examination in December 2009, and diagnosed depression and prescribed fluoxetine. Tr. 225. By February 2010, Plaintiff reported that he was "feeling much better from the standpoint of his mood" and Dr. Laguillo assessed Plaintiff with "Depression, clinically improved." Tr. 221, 223. In April 2010, and again in June 2010, Dr. Laguillo again noted that Plaintiff's depression was "Better" and assessed the condition as "clinically improved." Tr. 210, 212, 215, 217. By July 2010, Dr. Laguillo noted that were no new psychological symptoms, and assessed Plaintiff with "Depression, stable." Tr. 207, 209.

The ALJ's duty to develop the record exists even when, as in this case, the claimant is represented by counsel. *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ can develop the record by making a reasonable attempt to obtain medical evidence from the claimant's treating sources, ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to resolve the disability issue, subpoenaing or submitting questions to the claimant's physicians, continuing the hearing; or keeping the record open for supplementation. *Tonapetyan v. Halter*, 242 F.3d. 1144, 1150; 20 C.F.R. 404.1517; 42 U.S.C. § 423(d)(5)(A), (B). Generally, the ALJ need only obtain further information when the record does not contain sufficient medical evidence of the impairment. 20 C.F.R. § 404.1517. Within this regulatory framework, the Commissioner "has broad latitude in ordering a consultative

- 6 -

examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (citing *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)).

The ALJ did not err by failing to order a psychiatric consultative examination. Treatment notes from Arlo Brakel, M.D., a board certified neurosurgeon, from May 2010, demonstrated normal speech, normal memory, normal attention and concentration, intact cognition, the absence of evidence of disordered thought processes, the absence of naming or repetition difficulty, and, importantly, in light of possible non-physiologic vision loss, the absence of evidence of abnormal thought content, such as delusions or hallucinations, and no clinical features of depression. Tr. 245, 249. Plaintiff denied having anxiety, depression, or thought disorders. Tr. 248. Dr. Laguillo's treatment notes, described above, demonstrate that Plaintiff reported psychological symptoms once, in December 2009, of depression, anxiety and sleep disturbance, (Tr. 225) but that these symptoms were successfully treated by medication, with no reports by Plaintiff to his treating physician of continuing symptoms arising from his depression. Tr. 204-221. Notably, on several occasions in the disability application process Plaintiff denied he was disabled due to any mental condition, and was no longer being treated for or taking medications for a mental condition. *See* Tr. 162, 164-65, 182-183, 185, 192, 195. Moreover, while Dr. Gross may have suspected an emotional disturbance as the cause of Plaintiff's vision loss, the only evidence in the record that suggests any symptomatic or limiting features of the emotional disturbance, the vision loss, was already taken into account in Dr. Gross's report. There is nothing else in the record, outside of Plaintiff's successful treatment for depression, to suggest that Plaintiff suffered from an emotional disturbance, or any other symptoms or limitations that could be attributed to an emotional disturbance. Accordingly, there was sufficient evidence in the record from which to conclude that Plaintiff's psychological symptoms were non-severe, or to the extent they affected his vision, were taken into account by Dr. Gross, and the ALJ did not err by failing to order a psychiatric consultative examination or include limitations due to any psychiatric condition in Plaintiff's RFC. *See* Tr. 12, ¶3. *See McLeod v. Astrue*, 640 F.3d

881, 884 (9th Cir.2011) (ALJ had no duty to further develop the record when there was "nothing unclear or ambiguous" about what the treating physicians said).

>    2.   *The ALJ Erred by Failing to Acknowledge "Other Source" Evidence.*

Plaintiff argues that failure to acknowledge or provide an explanation for rejecting the report form Plaintiff's physical therapist constituted error by the ALJ. (Doc. 21, at 18.)

On May 6, 2010, at Dr. Laguillo's request, (Tr. 234) Plaintiff was evaluated by Dr. Brakel for "[a]bnormal cervical MRI." Tr. 235. The Plaintiff presented with "[n]eck pain with headache and arm pain." Tr. 235. After review of Plaintiff's MRI and a physical examination of Plaintiff, Dr. Brakel noted his impression as including cervical syndrome with MRI features of disc bulge and stenosis of cervical 3-4, and cervical pain syndrome with clinical features of right C7 radiculitis and question of ligamentous instability. Tr. 237.

At Plaintiff's follow up appointment to review cervical spine films, Dr. Brakel found Plaintiff's physical exam and diagnostic impression to be essentially identical to that of his first exam, with one exception, that there was no supportive evidence for ligamentous instability on plain spine films, and opined:

> At his initial evaluation, we reviewed diagnostic studies and the most congruent with his complaints was that of a cervical MRI done on 4/8/2010. This notes a congenital fusion at C2-3 and the first mobile segment below this (i.e., (sic) segment C3-4) has bulge. Degenerative changes with disc bulging are noted at C5-6 and C8-7.

Tr. 231. Dr. Brakel reported that he did not identify a neurosurgical disorder, and recommended conservative treatment, specifically physical therapy with cervical traction. Tr. 230, 234.

On August 18, 2010, Dr. Brakel signed the Physician's Medical Assessment & Treatment Plan Certification and Outpatient Physical Therapy Order, certifying that he had "examined the patient and therapy is necessary on an outpatient basis, that services

- 8 -

will be furnished while the patient is under my care, and that the plan is established and will be reviewed every 30 days or more often if patient's condition requires." Tr. 256. On October 1, 2010, after fourteen physical therapy visits, Plaintiff's therapist completed an assessment that stated that Plaintiff had made progress towards his goal of sitting for 15 minutes without limitation, but that he did not meet his goals of standing and walking for 15 minutes without limitation. Tr. 255 Dr. Brakel signed a second assessment and order on October 3, 2010, with the same certification as his previous order. Tr. 260.

The Court agrees with the Commissioner's contention that Plaintiff's physical therapist is not an acceptable medical source, as provided in 20 C.F.R. § 404.1513. (Doc. 22, at 17.) Additionally, there is no indication that the physical therapist worked under a physician's close supervision, thus the therapist's opinion is not entitled to the same deference as a treating source. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("other sources" not entitled to the same deference as acceptable medical sources). Thus, to the extent Plaintiff is arguing that the physical therapist is a treating source and that this opinion should be adopted as such, the Court rejects this argument.

Medical diagnoses are beyond the competence of lay witnesses and do not constitute competent evidence, *see Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), the ALJ, however, is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). The ALJ may discount such testimony from "other sources" only if the ALJ "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.,* 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Here, the ALJ erred by failing to address the physical therapists opinion in its entirety.

While the Commissioner argues that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, (Doc 22, at 17) citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), when determining a claimant's RFC, the "ALJ must consider all relevant evidence in the record including, *inter alia*, medical

records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins*, 466 F.3d at 883 (quoting SSR 96-8p). An ALJ should consider evidence from nurses and other medical professionals because such evidence may provide information regarding the severity of a claimant's impairment. 20 C.F.R. § § 404.1513(d); SSR 06–03p. Social Security Ruling 06–03p confirms that "the factors in 20 CFR 404.1527(d)" for the evaluation of medical opinions from "acceptable medical sources" can be applied to opinion evidence from 'other sources,'." *See* SSR 06–03p. Such factors include how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the source explains the opinion, whether the source has a specialty or areas of expertise related to the individual's impairment(s), and any other factors that tend to support or refute the opinion. *Id*. The ALJ may discount testimony from "other sources" if the ALJ "'gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (citations omitted). Here, the ALJ erred by failing to address the records from the physical therapist or to provide reasons why he disregarded the physical therapy assessment.[1]

### 3. The ALJ's Credibility Analysis as to Plaintiff's Pain Testimony is Not Supported by Substantial Evidence

The ALJ determined that Plaintiff's testimony regarding limitations in his ability to walk and sit, his hearing loss in the right ear, his allegations of right eye blindness, and his complaints of severe back and neck pain with radicular symptoms, were not supported by the objective evidence: "Having fully considered the medical evidence in the case, the record supports the allegation that the claimant would have some ongoing functional limitations, however, they are less than totally disabling in severity, and substantially less

---

[1] Though Plaintiff did not argue that the ALJ erred by not addressing the objective findings of Plaintiff's neurologist, Dr. Brakel, (aside from the MRI that Dr. Brakel considered), the Court notes that the ALJ failed to address Dr. Brakel's objective findings, and, on remand, the ALJ should consider the objective findings in Dr. Brakel's treatment notes.

severe than the claimant's testimony would suggest." Tr. 15. Plaintiff contends that the ALJ erred by relying solely on objective evidence to dismiss Plaintiff's credibility. (Doc. 21, at 20) citing *Bunnell v. Sullivan*, 947 F.3d 341, 345 (9th Cir. 1991). (Once the claimant has produced medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain, medical findings are not required to support the alleged severity of pain). The Commissioner asserts that, while an ALJ may not reject a claimant's subjective complaints based solely on the lack of objective medical evidence to fully corroborate the alleged severity of pain, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible. (Doc. 22, at 20) citing *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001); *Fair v. Bowen*, 855 F.2d 597, 602 (9th Cir. 1989); and *Batson v. Comm'r of the Soc.Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003).

When assessing a claimant's credibility, the "ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007) (internal quotation marks and citation omitted). Where, as here, the claimant has produced objective medical evidence of an underlying impairment that could reasonably give rise to the symptoms and there is no affirmative finding of malingering by the ALJ, the ALJ's reasons for rejecting the claimant's symptom testimony must be specific, clear and convincing. *Garrison*, --- F.3d at ---, 2014 WL 3397218 at *16; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn,* 495 F.3d at 635*; Robbins,* 466 F.3d at 883. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Orn,* 495 F.3d at 635 (the ALJ must provide specific and cogent reasons for the disbelief and cite the reasons why the testimony is unpersuasive). In assessing the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements about the symptoms, and other testimony from the claimant that appears less than candid; unexplained or inadequately explained failure to seek or

follow a prescribed course of treatment; the claimant's daily activities; the claimant's work record; observations of treating and examining physicians and other third parties; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Lingenfelter,* 504 F.3d at 1040; *Smolen,* 80 F.3d at 1284. *See also Robbins,* 466 F.3d at 884 ("To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony.")

The ALJ stated with the required specificity what symptom testimony he found not credible and what facts in the record led to that conclusion. *See* Tr. 15. Regarding his ability to walk and sit, the ALJ noted that the objective evidence did not support Plaintiff's allegations, and, in addition, noted that Plaintiff's testimony was inconsistent[2] with Plaintiff's report to Dr. Callahan on July 12, 2011, that he denies any difficulty walking. Thus, as to Plaintiff's testimony regarding his ability to walk and sit, the ALJ did not err by relying solely on the objective evidence to dismiss Plaintiff's credibility.

While The Commissioner notes that there are other inconsistencies in the record that support the ALJ's findings regarding his vision and hearing loss, as well as suggestions of malingering (See Tr. 176-77, 301, 304, 327) the ALJ failed to note these inconsistencies in his opinion. This Court's review is limited to the "reasons and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir.2009). Accordingly, the Court limits its analysis to the rationale and facts upon which the ALJ relied in determining that Plaintiff was not disabled. *See Garrison*, --- F.3d ---, 2014 WL 3397218 at *11 (citing *Connett*, 340 F.3d at 874.

The ALJ may not discredit Plaintiff's allegations of pain solely on the ground that the allegations are unsupported by objective medical evidence. *See Bunnell,* 947 F.2d at

---

[2] Although the ALJ includes this reference in his discussion of the objective medical evidence refuting Plaintiff's claim, it is actually a report of Plaintiff's subjective complaints which this Court considers as inconsistent with Plaintiff's testimony.

- 12 -

347-48. In this case, the ALJ identified contradictions between Plaintiff's testimony of total hearing loss in his right ear and right eye blindness with objective medical evidence from testing done in the months before the hearing that he had normal bilateral visual acuity with correction and that his hearing threshold in the affected ear remained fair to good. Tr. 15. Accordingly, the Court finds that the ALJ rejected Plaintiff's testimony not solely on a lack of corroborating medical evidence, but based on a finding that the clinical evidence contradicted Plaintiff's testimony. *See Carmickle v. Comm'r Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Moreover, testimony of the extent to which Plaintiff can see or hear is fundamentally different from pain or other symptom testimony which cannot be corroborated by medical evidence, and the rationale for declining to require objective medical evidence to corroborate the severity of pain should not apply to a limitation that can be scientifically corroborated. *Cf. Bunnell*, 947 F.2d at 347-48 (declining to conclude that Congress intended to require objective medical evidence to fully corroborate the severity of pain while aware of the inability of medical science to provide such evidence). The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone. *Burch v Barnhart*, 400 F.3d 676, 680 (9th Cir 2005)(citing SSR 96-7p (1996)). In this case, unlike attempting to ascertain the subjective sense of pain, Plaintiff's ability to hear and see can be established to a certain degree of scientific accuracy.[3]

The Court notes, however, that the ALJ mischaracterized, in part, Plaintiff's testimony that he had total hearing loss. Although Plaintiff initially stated he "lost [his] right ear," when asked if it was a complete loss he clarified that he could actually see the ALJ, but needed to position himself in a different location in order to do so. Tr. 47. When

---

[3] This is not to say that Plaintiff's limitations as they affect his ability to perform activities of daily living or to work can be objectively assessed. However, in this case, there is no evidence that Plaintiff alleged difficulty in performing specific tasks due to vision or hearing loss.

- 13 -

asked if he "totally" lost his hearing in his right ear, Plaintiff stated "Yeah. I mean what I hear is, when you're talking to me I have this one turning like this because I just hear, like a thumping in my right ear." Tr. 49. Because the ALJ focused on Plaintiff's initial claims of complete right side hearing and vision loss, the ALJ did not inquire into how Plaintiff's hearing loss and diminishment in his vision affected his ability to work. In fact, Plaintiff stated, twice during his testimony, that it was his inability to sit for long periods that rendered him unable to work. Tr. 54, 59.

Finally, the ALJ rejected Plaintiff's complaints of severe back and neck pain with radicular symptoms because the evidence did not corroborate the Plaintiff's subjective symptoms. The Commissioner does not address this finding in his response, and the Court finds that the ALJ erred by relying solely on a lack of objective medical evidence to support his credibility finding as to Plaintiff's complaints of pain. *See Burch*, 400 F.3d at 681 ("lack of medical evidence" can be "a factor" in rejecting credibility, but cannot "form the sole basis").

### B. The ALJ Did Not Err in Determining that Plaintiff's Impairment Does Not Meet or Equal a Listed Impairment

In the third step of the five-step analysis, the ALJ must determine whether a claimant's impairment meets or equals an impairment in the Listing of Impairments, found at 20 C.F.R. Part 404, Subpt. P, App. 1. *See* 20 C.F.R. § 1520(a)(4)(iii) and (d). Plaintiff contends that the ALJ's determination that the Plaintiff's spinal condition does not meet or medically equal the requirements of the Listings, § 1.04(A), regarding disorders of the spine is not supported by substantial evidence. (Doc. 21 at 12-15.)

The Listings describe specific impairments of each of the major body systems which are considered "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience" and designate "the objective medical and other findings needed to satisfy the criteria of that listing." *See* 20 C.F.R. §§ 404.1525(a) and (c)(3). A claimant with an impairment which (1) meets or equals an impairment listed in Appendix I and (2) meets the duration requirement is awarded

1  benefits at step three without further inquiry. *See* 20 C.F.R. § 404.1520(d). A mere
2  diagnosis is insufficient to meet or equal a listed impairment; a claimant must establish
3  that he or she "satisfies all of the criteria of that listing, including any relevant criteria in
4  the introduction." *See* 20 C.F.R. §§ 404.1525(c)(3) and (d). To equal a listed impairment,
5  a claimant must establish symptoms, signs, and laboratory findings "at least equal in
6  severity and duration" to the characteristics of a relevant listed impairment. *See generally*
7  20 C.F.R. § 404.1526 (explaining medical equivalence). A generalized assertion of
8  functional problems is not enough to establish disability at step three. *Tackett v. Apfel*,
9  180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526.)

    Section 1.04(A) requires a claimant to show disorders of the spine, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture, resulting in compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04 (A) (2013).

    The ALJ determined that the objective evidence did not establish compromise of a nerve root or the spinal cord with additional findings of nerve root compression or spinal arachnoiditis or lumbar spinal stenosis. Tr. at 13. Plaintiff submits that Plaintiff has a qualifying disorder of the spine, a congenital vertebral fusion at C2 and C3 with cervicalgia (painful sensation in the neck area) and cephalgias (headache) and degenerative changes at the adjacent segments including disc disease (bulge) resulting in a compromise of the nerve root (*i.e*. stenosis at C3-C4, per and /or radiculitis at C7).

    Even if Plaintiff's contentions are accurate, Plaintiff has not established that he "satisfies all of the criteria of that listing, including any relevant criteria in the introduction." *See* 20 C.F.R. § 404.1525(c)(3). Functional loss caused by a musculoskeletal system disorder is defined as the inability to ambulate effectively on a

sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." *See the Listing of Impairments* § 1.00(B)(2)(a).

The inability to ambulate effectively means "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *See id.* § 1.00(B)(2)(b)(1). Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held device that limits the function of both upper extremities. *See id.* "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *See id.* § 1.00(B)(2)(b)(2).

The inability to perform fine and gross movements effectively means "an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *See id.* § 1.00(B)(2)(c). "To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the

inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *See id*.

As the Commissioner correctly points out, objective medical evidence does not demonstrate the required degree of limitation in the ability to walk or use the upper extremities to constitute a functional loss equal to or equivalent in severity to meet the requirements of the Listing of Impairments. Examinations consistently revealed normal lower extremity muscle strength, a normal gait, and normal balance (Doc. 22, at 11, citing Tr. 208, 211, 216, 222, 227, 233, 327). Similarly, objective medical evidence did not demonstrate the required degree of limitation of function of both upper extremities to constitute ineffective performance of fine and gross movements. In fact, examinations consistently revealed normal upper extremity muscle strength and the absence of upper extremity muscle weakness (*Id*. citing Tr. 233, 237, 327). Plaintiff has not sustained his burden of showing how his symptoms, signs, and laboratory findings were equivalent in severity to the required extreme functional limitations noted above.

**IV.    Remedy**

The Ninth Circuit has held that a court should remand to an ALJ with instructions to calculate and award benefits where three conditions are met: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, --- F.3d ---, 2014 WL 3397218 at *20 (citations and footnote omitted). Even when all conditions of the credit-as-true rule are satisfied, a court should nonetheless remand for further proceedings when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id*. A district court abuses its discretion, however, by remanding for further proceedings where the credit-as-true rule is

satisfied and the record affords no reason to believe that the claimant is not, in fact, disabled. *Id*.

After applying the credit-as-true rule to improperly discredited evidence, outstanding issues remain to be resolved before determining that Plaintiff is entitled to benefits. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the physical therapist's assessment and for finding portions of Plaintiff's testimony as to pain not credible. There is, however, no testimony by the vocational expert that crediting these statements as true would preclude past work or any work.

In cases where the testimony of a vocational expert has failed to address functional limitations as established by improperly discredited evidence, this Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (citation omitted). Thus, a remand for further proceedings is appropriate in this case.

IT IS ORDERED:

1. The Commissioner's decision denying benefits is REVERSED.
2. The case is REMANDED for further proceedings consistent with this order.
3. The Clerk is directed to enter judgment accordingly.

Dated this 19th day of September, 2014.

_____
Bernardo P. Velasco
United States Magistrate Judge